IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2006 Session

## CHESTER B. OWENS, ET AL. v. TENNESSEE RURAL HEALTH IMPROVEMENT ASSOCIATION, ET AL.

**Direct Appeal from the Chancery Court for Gibson County**
**No. H4754     George R. Ellis, Chancellor**

_____

**No. W2005-02445-COA-R3-CV - Filed July 3, 2006**
_____

Plaintiffs filed this declaratory judgment action to determine whether their claims for insurance benefits were covered under their health insurance policy. Defendant insurance carrier asserted the policy of insurance was void where Plaintiffs' application for insurance contained material misrepresentations that increased the risk of loss. The trial court entered judgment for Plaintiffs and Defendants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Robert B. Littleton, Taylor B. Mayes and David L. Johnson, for the appellants, Tennessee Rural Health Improvement Association and BlueCross BlueShield of Tennessee.

Mark L. Agee and Jason C. Scott, Trenton, Tennessee, for the appellees, Chester B. Owens and wife, Francine Owens.

### OPINION

This appeal arises from a declaratory judgment action filed in January 2003 by Plaintiffs Chester B. Owens (Mr. Owens) and Francine Owens (Ms. Owens, collectively "the Owens") seeking to determine whether Defendants Tennessee Rural Health and Improvement Association and BlueCross BlueShield of Tennessee (collectively, "Tennessee Rural Health") were obligated to provide insurance coverage. The pivotal issue in this case is whether the Owens provided false information with respect to Ms. Owens on their August 25, 2000, application for long-term health insurance.

Ms. Owens is an African-American woman who, at thirty-nine years of age, was diagnosed with breast cancer on September 26, 2000. Tennessee Rural Health initially approved coverage for Ms. Owens' cancer treatment and continued to accept premium payments from the Owens. According to Ms. Owens, she discovered Tennessee Rural Health had cancelled her insurance sometime in 2002. In their complaint, the Owens assert Tennessee Rural Health denied benefits on the grounds that Ms. Owens' breast cancer was a pre-existing condition.

In its answer, Tennessee Rural Health admitted that it initially denied benefits on the grounds that Ms. Owens' cancer was a pre-existing condition. Tennessee Rural Health further asserted, however, that the ultimate basis for denial was misrepresentations made by the Owens on their application of insurance. Tennessee Rural Health asserted Ms. Owens had been diagnosed with a lump or mass in her breast on August 23, 2000, prior to completion of the August 25 application, and that this information had not been disclosed on the application.

A bench trial was held on April 20, 2005. The trial court determined the Owens were entitled to coverage under their health care insurance policy where Ms. Owens answered all the relevant questions on the application "as reasonably as any layman could possibly do." Tennessee Rural Health filed a timely notice of appeal to this Court. We affirm.

### *Issues Presented*

The issues as presented by Tennessee Rural Health for our review are:

(1)     Since the couples' insurance policy application contained false information that materially increased the defendants' risk of loss, did the trial court err by holding that the defendants were obligated to provide coverage under the policy?

(2)     Did the trial court err by requiring the defendants to prove that the couple knowingly provided false information?

The foremost issue, however, as we perceive it, is whether Ms. Owens provided false information on her application for insurance such that the contract of insurance is defeated under Tennessee Code Annotated § 56-7-103 where Ms. Owens indicated that she had not been "advised to have treatment, surgery or testing that has not been done."

### *Standard of Review*

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate

courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

> Tennessee Code Annotated provides:
>
> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code. Ann. § 56-7-103(2000). In order to avoid coverage under § 56-7-103, the insurer must first demonstrate that the insured provided a material answer that was false. *Womack v. Blue Cross & Blue Shield of Tennessee*, 593 S.W.2d 294, 295 (Tenn.1980). Second, it must demonstrate that the false statement was made with the intent to deceive or that the false answer increased the insurer's risk of loss. *Id.* Whether an answer is false is a question of fact for the trier of fact. *Spellmeyer v. Tennessee Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993).

*Analysis*

The dispositive issue of this dispute, as we perceive it, is whether Ms. Owens falsely answered question number sixteen on the application of insurance provided by Tennessee Rural Health and completed by Ms. Owens on August 25, 2002.[1] Question sixteen asked whether the applicant had been "[a]dvised to have treatment, surgery or testing that has not been done." Ms. Owens answered, "No."

Tennessee Rural Health asserts this answer was a misrepresentation where, during a visit to her family physician on August 23, 2000, Ms. Owens was scheduled to have a bilateral mammogram on August 31; ultimately had the bilateral mammogram on September 25; underwent an ultrasound on her left breast following the mammogram on the same day; and ultimately was diagnosed with breast cancer. Tennessee Rural Health further asserts that the trial court applied an incorrect legal standard where it "essentially required [Tennessee Rural Health], as part of the <u>first</u> step, to prove not only that the Owens' answers to the questions set forth in the health insurance policy application were false, but that they were intentionally false." It contends that whether the Owens intentionally

---

[1] Tennessee Rural Health contends that Ms. Owens' answer to question number five was also a misrepresentation where Ms. Owens indicated that she had not received "medical advise [sic] or treatment or been medically diagnosed" with "reproductive system, menstruation, or breast disease/disorder." At oral argument, counsel for Tennessee Rural Health concedes that Ms. Owens answer to question five was "arguably true." We agree. There is nothing in the record to indicate that Ms. Owens had been diagnosed, treated, or advised that she had breast cancer before August 25, 2002.

provided false information is immaterial where the application in fact contained false information that increased Tennessee Rural Health's risk of loss.

Ms. Owens, on the other hand, asserts her answer was not a misrepresentation where she had been ordered to have a routine bilateral screening mammogram and had no reason to believe that she had cancer or any other breast disorder when she completed the application for insurance on August 25. She further asserts the trial court did not apply an erroneous standard, but that the court's order implies a finding that Ms. Owens' statements on the application of insurance were not false.

It is undisputed that, on August 23, 2000, Ms. Owens visited her family physician, Dr. Beryl Yancey (Dr. Yancey) and had health insurance under the second of two short-term insurance policies that she obtained after losing her health insurance when her employer went out of business in April 2000. Ms. Owens and Dr. Yancey assert the visit was to seek treatment for discomfort which Dr. Yancey diagnosed as a urinary tract infection. They further assert that, while in the office, Ms. Owens mentioned that she had some "lumpiness" in her breast which she believed was caused by breast milk which had not yet "dried up" after her youngest child was born in 1999. Dr. Yancey suggested that Ms. Owens have a mammogram, and ordered a mammogram for August 31.[2]

Ms. Owens ultimately obtained the mammogram on September 25. An ultrasound examination of her left breast also was conducted on September 25. On September 26, Ms. Owens consulted Dr. George Thomas (Dr. Thomas), a surgeon. Dr. Thomas testified by deposition that Ms. Owens brought her test results with her to the consultation; that she told him that she had been aware of a lump in her breast for "a month or so;" that his examination of Ms. Owens revealed a palpable mass of two to three centimeters; and that a mass of that size is one "that can be readily felt, and not overlooked." He further stated that an ultrasound has "some connotations as far as diagnosis." Dr. Thomas also testified that a screening mammogram is one "done just to screen, without the knowledge of anything being wrong," while a "diagnostic mammogram is done when you have a palpable lesion."

Tennessee Rural Health asserts that the mammogram ordered by Dr. Yancey on August 23 was a "test" in light of the circumstances of this case. Although it conceded at trial and at oral argument before this Court that being advised to have a routine yearly mammogram on the basis of age alone would not constitute a test, it asserts that the evidence demonstrates that Ms. Owens was aware that she had a lump in her breast when she completed the application, and that she had been advised by Dr. Yancey to have more than a simple screening mammogram.

In support of its position, Tennessee Rural Health points to conflicting medical records of Dr. Yancey, one which indicates that Dr. Yancey felt a lump in Ms. Owens' breast on August 23 and ordered a mammogram in addition to antibiotics for an infection, and one which includes only the diagnosis of a urinary tract infection. It further asserts that, although Dr. Yancey testified that she did not examine Ms. Owens' breast and that the record indicating only a urinary tract infection is the

_____

[2]The parties do not dispute that a mammogram must be ordered by a physician.

correct one, Dr. Yancey is not credible in light of questionable circumstances. Tennessee Rural Health also points out that, in addition to the bilateral mammogram, Ms. Owens underwent an ultrasound examination of her left breast on the same day, and that she was aware of a lump in her breast for about a month before consulting with Dr. Thomas.

Ms. Owens, however, asserts that, as of August 25, she had not been advised to have anything other than a routine screening mammogram. She testified that there was no breast cancer in her family and that she had not had prior problems with her breast other than "lumpy breasts during that time for milk to dry" following her two pregnancies. She also testified that she had not had a previous mammogram because she had read that a mammogram was recommended for women over forty year of age, and that she was waiting until she turned forty.

Dr. Yancey testified that the American Cancer Society recommends that African-American women get mammograms after age thirty, regardless of whether they have any symptoms of breast problems. She testified that Ms. Owens had recently delivered a baby, and that Ms. Owens thought her breast was lumpy because of breast milk. Dr. Yancey was asked at trial "was there any reason other than her [Ms. Owens'] age and her race – was there any reason other than those two things alone that – that made you refer her for that mammogram?" Dr. Yancey responded, "No."

In light of the entire order and proceedings, we do not agree with Tennessee Rural Health that the trial court applied an erroneous legal standard by requiring it to prove, as an initial matter, that Ms. Owens intentionally made a false statement on her application. Question sixteen asks simply whether the applicant was advised to have tests. Dr. Yancey and Ms. Owens testified that she had not been advised to have anything other than a routine screening mammogram based on her race and age. Whether their testimony was credible is a determination for the trial court and will not be overturned by this Court absent clear and convincing evidence to the contrary.

Although we are not insensitive to the circumstances surrounding this dispute or to the issues surrounding the credibility of Dr. Yancey, we cannot say the record contains clear and convincing evidence to warrant disturbing the trial court's implicit determination that Ms. Owens and Dr. Yancey were credible. The radiology report contained in the record, moreover, indicates only that Dr. Yancey ordered a "mammogram, bilateral." Although the radiology report also contains an ultrasound report, Ms. Owens testified that she had not been ordered to have an ultrasound and that she thought she recalled that, while she was in the radiology department for the mammogram, "they had to call in to get that order." There is nothing in the record to suggest mention of an ultrasound before September 25.

In the trial court, Tennessee Rural Health simply failed to carry its burden of demonstrating that Ms. Owens had been advised to have anything other than a routine screening mammogram on August 25, 2000. Whether Dr. Yancey advised Ms. Owens otherwise is a matter of credibility, and Tennessee Rural Health has failed to point to clear and convincing evidence in the record to demonstrate that the trial court erred in accepting Ms. Owens' and Dr. Yancey's testimony as true. In light of our highly deferential standard of review on matters of witness credibility, we cannot say

the evidence preponderates against the trial court's judgment, implicit in which is a determination that Ms. Owens did not answer question sixteen falsely when she completed the application for insurance on August 25, 2000.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, Tennessee Rural Health and Improvement Association and BlueCross BlueShield of Tennessee, and to their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE