IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2011 Session

## STEPHEN TODD MAYS v. MELISSA GAIL MAYS

**Appeal from the Circuit Court for Wilson County**
**No. 6281DVC     Clara W. Byrd, Judge**

---

**No. M2010-02479-COA-R3-CV - Filed April 23, 2012**

---

In this divorce action, Husband appeals the trial court's determination of the amount of his monthly income, grant of alimony *in futuro* to Wife, amount of child support he was ordered to pay, and denial of the introduction of certain of Husband's tax records; Husband also contends that the trial court erred in holding him in civil contempt for, *inter alia*, nonpayment of his spousal and child support obligations. We affirm the court's determination of the amount of his monthly income and finding that Wife is entitled to alimony. Finding that the evidence preponderates against the trial court's finding that Wife cannot be rehabilitated, we vacate the award of alimony *in futuro* and remand the case for the court to reconsider the nature and amount of alimony. We also remand the case for the court to reconsider the amount of child support and, as necessary, to make findings required by the child support guidelines. We affirm the holding that Husband was in civil contempt, but vacate the sentence of 180 days imprisonment. In all other respects the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the Appellant, Stephen Todd Mays.

Melanie R. Bean, Lebanon, Tennessee, for the Appellee, Melissa Gail Mays.

## OPINION

Stephen Todd Mays ("Husband") and Melissa Gail Mays ("Wife") were married for twelve years and have one minor child. On February 5, 2008, Husband filed for divorce. Wife filed several motions seeking, *inter alia*, temporary alimony and child support and exclusive use of the marital residence. On April 8, the court entered an order granting Wife exclusive possession of the marital home pending the final hearing, requiring Husband to maintain the parties' indebtedness and living expenses, granting Husband visitation with the child,[1] and requiring Husband to pay $225 per week in *pendente lite* support.

During the pendency of the divorce, Wife filed two petitions for contempt. Wife's first petition was filed on May 21, 2008 and was disposed of by order of July 7, 2008.[2] Wife filed her second petition for contempt on November 13, 2008, charging Husband with civil and criminal contempt and alleging, in pertinent part, that Husband had failed to make the *pendente lite* support payments; that he had not maintained the marital debts; and that he had caused the internet, water, electricity, cell phone, and cable services to be terminated at the marital home. Thereafter, Wife filed an answer and a counter complaint for divorce on the grounds of inappropriate martial conduct and irreconcilable differences.

A trial on the divorce was held on five days between April and October of 2009. On November 20, 2009, the court issued its decree granting Wife a divorce on the ground of inappropriate marital conduct; naming Wife the primary residential parent and ordering Husband to pay child support in the amount of $225 per week; and awarding Wife $17,727.30 as alimony *in solido* and $225 per week as alimony *in futuro*. Because Husband's bankruptcy case was pending at the time of trial,[3] the court reserved its rulings with respect to the division of the parties' debts and Wife's second petition for contempt. The court also entered a permanent parenting plan. Following the entry of the decree, Wife filed a third petition for contempt, alleging that Husband scheduled events with the child during Wife's parenting time and that he had failed to make his child and spousal support payments. On December 15, 2010, the court entered an order holding Husband in contempt.

---

[1] The record does not contain a temporary residential parenting schedule adopted by the court.

[2] The court found that Husband was not in willful contempt; that ruling is not at issue on appeal.

[3] Husband filed a Chapter 11 bankruptcy petition on November 6, 2008.

On appeal, Husband asserts that the trial court erred in four ways: (1) by finding that Husband had the ability to pay alimony and by granting Wife alimony *in futuro* rather than rehabilitative or transitional alimony; (2) in its assessment of Husband's income and, thus, the amount of child support awarded; (3) by finding Husband in contempt for failure to pay his support payments; and (4) by denying Husband the opportunity to submit his 2008 and 2009 tax returns.

DISCUSSION

*I. Husband's Income*

When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Insofar as the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Owens v. Tennessee Rural Health Improvement Ass'n*, 213 S.W.3d 283, 285 (Tenn. Ct. App. 2006).

In the final decree the court made the following finding of fact:

> The evidence demonstrates his business has not declined. Husband has not been truthful with regard to his income. Husband has failed to provide discovery requests and has been less than forthcoming with records pertaining to his income and business. Husband has had total control of all income of at least $8,000.00 per month. Husband has been able to maintain a good standard of living post separation with all the amenities and toys he had prior to filing for the divorce and while keeping the child involved in expensive hobbies. Further, Husband's girlfriend and one or more of her children have been residing with him free of charge. His girlfriend has been driving his vehicle on a regular basis. Husband's testimony regarding his hourly wage, $40.00 per hour plus billing for expenses, is further demonstrative of his ability to pay on a standard hourly basis without even considering the other substantial evidence previously referenced about Husband's income.

Husband asserts that the trial court erred in determining his income to be $8,000 per month and in basing his child and spousal support obligations on that amount.

The proof showed that Husband is self-employed and runs a construction, maintenance, and repair business. Husband introduced his tax return from 2007, in which

-3-

he reported gross receipts of $110,241; the cost of goods and materials deducted therefrom was $56,948, for a gross profit of $52,293. On cross examination, Husband admitted that his bank statements showed that he had deposited more money into his account than he had claimed as gross receipts on his 2007 tax return.[4] Various bank forms documenting a loan Husband secured for the purchase of a boat were admitted into evidence, including one dated October 5, 2007, on which Husband's monthly income was listed as $8,000 per month; the form indicated that Husband's monthly income was verified by 2006 IRS 1099 forms and 2007 pay stubs. In addition, copies of Husband's 2007 business invoices, totaling approximately $198,000, were introduced at trial.

At the time of trial, Husband's 2008 tax return had not been completed. Husband testified that the best evidence of his business expenses and income for 2008 were his business invoices, which were stored in electronic form on his computer.[5] Husband prepared and provided a document that was a typed summary of the invoices, which showed the total payment for each job; the summary of his invoices totaled $129,635—a gross income of approximately $10,803 per month. On cross examination, Husband testified that between May 2008 and March 2009 he deposited approximately $114,000 into his bank account, or approximately $10,363 per month.[6]

After review of the record, and considering the deference we give to the trial court's determination of Husband's credibility, the evidence does not preponderate against the trial court's finding that Husband's income was $8,000 per month, and the court properly used that amount in setting Husband's child and spousal support obligations.

*II. Child Support*

Husband contends that the trial court erred in determining his income and that, consequently, his child support obligation should be modified. As noted above, the evidence

---

[4] Husband's bank statements for 2007 showed total deposits of approximately $169,000.

[5] Husband did not provide copies of the original invoices.

[6] In his brief, Husband contends that, due to business expenses, his actual profit was much less than the amount reflected on his bank statements and on the summary of invoices. Husband asserts that his bank account deposits for 2008 totaled $138,692, but that approximately 70% of that amount—more than $97,000—was used to pay for business expenses. In support of that assertion, Husband cites to a portion of his testimony. The cited testimony, however, does not support his contention on appeal. Husband testified that, of the *fuel expenses* reflected in his bank account, approximately 70% were for business and that approximately 30% were for personal use. Husband's brief contains no other citations to the record as to the amount of business expenses claimed by Husband in 2008.

does not preponderate against the trial court's finding that Husband's income was $8,000 per month, and the court properly based Husband's child support obligation on that amount. We have determined, however, that the amount of support ordered by the court was not determined in accordance with the applicable regulations.

Child support is determined on a monthly basis. *See* Tenn. Comp. R. & Regs. 1240-02-04-.09. As reflected on the child support worksheet attached as an exhibit to the permanent parenting plan, application of the child support guidelines results in a basic child support obligation and presumptive child support order of $935 per month. While the court had authority pursuant to Tenn. Comp. R. & Regs. 1240-02-04-.04(11)[7] to order the $935 monthly support to be paid in weekly installments, it ordered Husband to pay child support in the amount of $225 per week.[8] There is no indication in the record of how the amount of weekly child support was determined. It appears, however, that the amount of child support ordered by the court results in a deviation from the presumptive child support order.[9] We do not know whether this resulted from a misapplication of the guidelines or a mathematical error in calculating the amount of monthly support, determined according to the guidelines, which was to be paid on a weekly basis.

If the court intended to deviate from the presumptive child support order, then the court was obligated to make the findings required by Tenn. Comp. R. & Regs. ch. 1240-02-04-.07(1). If a mathematical error was made, then it should be corrected. For this

---

[7] Tenn. Comp. R. & Regs. 1240-02-04-.04(11)(d) provides:

(11) Presumptive Child Support Order.

(d) Payments of child support shall be ordered to be paid in a specific dollar amount on a weekly, biweekly (every two weeks), semi-monthly, or monthly basis.

[8] The child support portion of the parenting plan stated the following in pertinent part:

Father's gross monthly income is: $8,000.00
Mother's gross monthly income is: $1,733.00

The final child support Order is as follows:
a. The Mother x Father shall pay to the other parent as regular child support the sum of $225.00 x weekly monthly twice per month every two weeks. The Child Support Worksheet shall be attached to this Order as an Exhibit.

[9] 52 weekly payments of $225 equals $11,700 per year, while application of the guidelines results in 12 monthly payments of $935 totaling $11,220 per year; thus the annualized difference between Husband's child support determined on a monthly basis and the weekly support ordered by the court is $480.00.

purpose, we remand the case for the court to reconsider the amount of child support and, as necessary, to make the findings required by the guidelines.

### III. Spousal Support

Husband contends that the trial court abused its discretion in awarding Wife alimony *in futuro* because the evidence preponderates against the court's finding that he had the ability to pay alimony and because Wife could be rehabilitated. Husband contends that rehabilitative or transitional alimony, rather than alimony *in futuro*, should have been awarded.

Trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Spousal support decisions require a careful balancing of the factors in Tenn. Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case. *See Anderton*, 988 S.W.2d at 683; *see also Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). The two most important factors are the obligor's ability to pay and the disadvantaged spouse's need. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). In *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011), our Supreme Court discussed this court's review of a trial court's spousal support decision and explained:

> "The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. . . . Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Gonsewski*, 350 S.W.3d at 105–06 (citations omitted).

In section I of our discussion, we affirmed the trial court's finding that Husband had income of $8,000 per month at the time of trial. Other than asserting that his income was less than that found by the court, Husband does not challenge the court's finding that he has the ability to pay alimony; consequently, we affirm the trial court's finding that he has the ability

to pay alimony. Our analysis focuses on his assertion that an award of alimony *in futuro* was not appropriate because Wife can be rehabilitated. We review the court's finding that Wife cannot be rehabilitated under the standard at Tenn. R. App. P. 13(d).

An award of alimony *in futuro* is appropriate "where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors," including those enumerated in § 36-5-121(i). Tenn. Code Ann. § 36-5-121(d)(3). According to Tenn. Code Ann. § 36-5-121(f)(1):

> Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve . . . an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable . . . to the post-divorce standard of living expected to be available to the other spouse . . . .

Tenn. Code Ann. § 36-5-121(f)(1).

In making the award of alimony *in futuro*, the court stated:

> . . .Wife is not capable of rehabilitation. Even with the award of periodic alimony, Wife will not be able to maintain the standard of living the parties enjoyed during the marriage or that Husband is enjoying post separation and post divorce. The Court finds there was an agreement that Wife would stay at home when Zachary was born. Zachary was her job. Wife largely contributed to the marital household as a Mother, homemaker, and bookkeeper for the business. Wife did have some employment during the marriage some of which required her to begin her work day at 3:00 a.m. and still attend to her homemaking and business duties in addition to outside employment. Wife was the party preparing all the paperwork and bookkeeping for Husband's business. The Court finds that were it not for the efforts of the Wife in the home and with the business there would not have been a business. Wife was not prepared for the divorce when Husband filed. Wife was advised to obtain employment by the Court and she did so. Thereafter, the succession of Husband's cruel acts affected Wife's employment ability (i.e. car repossession, termination of utilities, etc) and required Wife to be back and forth between residences just to maintain necessities. Wife currently is employed full time and earns a meager wage.

With respect to the potential for her rehabilitation, Wife testified as follows:

Q. Given that you've had difficulty finding employment, have you looked into any type of schooling that might possibly rehabilitate you?
A. I did.
Q. Where have you looked?
A. Vol State, Nashville Tech, Draughons.
Q. What are you looking to do? Are you looking to - -
A. I mean, if this were - -
Q. What type of degree?
A. I - - you know, a dental hygienist, possibly, something in the medical field, you know. I kind of got discouraged when I was checking in on all of this because, not only do you have to take an entrance exam that costs, you've, you know, for - - depending on what you would want to do, there's multiple classes that have to be taken because, you know, being out of school for so long.
It overwhelmed me at the expense of just a minor degree. You're looking at close to two years, upwards of $10,000, depending on how many classes you have to take. It's approximately, on an average, you know, I average, about $430 a class.
Well, I mean, you - - on average, you're going to have anywhere from, you know, 9 to 26 classes you got to take. Depending - -
Q. Depending on your score on your entrance exam?
A. Correct. It all depends on where you score on the entrance exam. Those figures were very overwhelming considering that I'm living on 200 and something dollars a week. Seems a little far out of my range right now.
Q. But you - - would you like the opportunity if the Court can make him pay, if the Court deems - - deems it fit and the Court can make him pay, would you like the opportunity to try to get some rehabilitation and education so you can - -
A. I would love that not only just for myself but for my children as well, you know. The better off I am, the better they can be.
Q. So basically, the type of degree you are looking at is some type of a two-year degree, some type of an associate's degree or technical degree, correct?
A. Correct.
Q. If you had that rehabilitation, do you believe your ability to find employment would be increased?
A. Oh, yeah, absolutely.
Q. Do you believe your husband can afford to pay you rehabilitative alimony?
A. I believe it's been proven he can afford to pay, period.

-8-

MR. PARRISH:     Nonresponsive, Your Honor.
THE WITNESS:    Yes, I do.
BY MS. BEAN:
Q.  If it were to cost $10,000 over two years to send you back to school, do
you believe that's something he can afford to pay for?
A.  Yes, I do.

At the time of trial Wife was 41 years old and employed at Mallory Security earning $10 per hour.  She had a high school education and was working as an office manager at Century 21 at the time of her marriage.  During the marriage, she worked outside the home for approximately six months at WalMart and Aldi grocery store, leaving both jobs to attend to family responsibilities.  We have not been cited to any proof of physical or mental disabilities or other impediments to her rehabilitation.  As noted in the quoted excerpt from her testimony, she wants to be rehabilitated but is unable to pay for schooling.  The proof of Wife's educational and employment history, age, and other statutory factors, along with her expressed desire to pursue additional education which would enhance her employment potential, preponderates against the trial court's finding that Wife cannot be rehabilitated.

Moreover, *Gonsewski, supra,* reiterated the statutory preference for transitional or rehabilitative alimony over alimony *in solido* or *in futuro*, stating that "[t]he statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible."  *Gonsewski*, 350 S.W.3d at 109 (Tenn. 2011).  The court held that "[w]hile this statutory preference does not entirely displace long-term spousal support, alimony *in futuro* should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary."  *Id*; *see also* Tenn. Code Ann. § 36-5-121(f)(1).

While the evidence supports the finding that Wife has a need for alimony, it does not show that economic rehabilitation of Wife is not feasible; Wife has indicated a willingness to acquire additional education or training and, thereby, to increase her earning potential.  Accordingly, we affirm the finding that Wife has a need for alimony and Husband has the ability to pay; we vacate the award of alimony *in futuro* and remand the case for a reconsideration of the nature, amount and duration of alimony to be awarded.

The trial court is directed to consider the amount and duration of rehabilitative alimony to permit Wife to accomplish her objectives.  Our action in vacating the award of alimony *in futuro* does not preclude the court from considering the extent to which a concurrent award of alimony *in futuro* may be appropriate should the court find that Wife can only be partially rehabilitated.  *See* Tenn Code Ann. § 36-5-121(d)(4) ("An award of alimony

-9-

in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated . . . .").

*IV. Contempt*

On December 2, 2010, the trial court held a hearing on the issues reserved from the trial and on the third contempt petition. At the hearing, Wife waived her claims for criminal contempt and proceeded only on her claims for civil contempt. On December 15, the court entered its order in which it found Husband guilty of 18 counts of "willful civil contempt" and sentenced him to 180 days in jail. The order also provided that Husband could purge the contempt by paying $49,678.30—the total amount then owing on Husband's various child support and spousal support obligations—by December 3. Husband paid the amount ordered by the court and did not spend any time in jail. Husband asserts that his failure to pay alimony and child support was not willful because he did not have the funds to pay his support obligations and that, as a consequence, his conviction of civil contempt should be reversed.[10] He also contends that he was not aware of the amount of his support obligation.

We first discuss the authority for the court to hold Husband in contempt. In *McPherson v. McPherson*, M2003-02677-COA-R3CV, 2005 WL 3479630 (Tenn. Ct. App. Dec. 19, 2005), we distinguished civil contempt from criminal contempt as follows:

> An act of contempt is a willful or intentional act that hinders, delays, or obstructs the court's administration of justice. *Ahern v. Ahern,* 15 S.W.3d 73, 78 (Tenn. 2000); *Winfree v. State,* 135 S.W.2d 454, 455 (Tenn. 1940). An act of contempt may be either civil or criminal in nature, *Reed v. Hamilton,* 39 S.W.3d 115, 118 (Tenn. Ct. App. 2000), and determining whether a punishment for contempt is civil or criminal depends on the character and the purpose of the sanction imposed. *Robinson v. Fulliton,* 140 S.W.3d 304, 309 (Tenn. Ct. App. 2003).

> Sanctions for criminal contempt are punitive in character, and their primary purpose is to vindicate the court's authority. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d 465, 474 (Tenn. 2003); *Black v. Blount,* 938 S.W.2d 394, 398 (Tenn. 1996). Criminal contempt sanctions are imposed

---

[10] For a court to find a party in contempt for failure to pay alimony and child support, the court first must determine that the obligor had the ability to pay at the time the support was due and that the failure to pay was willful. *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 613 (Tenn. Ct. App. 2006).

simply as punishment, *Ahern v. Ahern,* 15 S.W.3d at 79, and persons imprisoned for criminal contempt cannot be freed by eventual compliance with the court's orders. *Robinson v. Fulliton,* 140 S.W.3d at 310. . . .

Civil contempt sanctions, unlike criminal contempt sanctions, are intended to coerce a party to comply with the court's order. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 473. Their purpose is to enforce private rights. *Black v. Blount,* 938 S.W.2d at 398. Persons found to be in civil contempt "hold the keys to the jail" and may purge themselves of contempt by complying with the court's order. *Robinson v. Fulliton,* 140 S.W.3d at 309; *Garrett v. Forest Lawn Mem'l Gardens,* 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). Persons who have failed to make payments required by a previous court order may be held to be in civil contempt only if the court concludes, by a preponderance of the evidence, that they have not made the payments even though they have the present ability to do so. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 474; *Ahern v. Ahern,* 15 S.W.3d at 79; *Loy v. Loy,* 222 S.W.2d 873, 877-78 (Tenn. Ct. App. 1949).

*McPherson,* 2005 WL 3479630 at *3-4.

In the instant case, while the trial court was empowered to hold Husband in civil contempt under the authority granted at Tenn. Code Ann. § 29-9-102 & -103, the court wrote that it was holding Husband in civil contempt pursuant to Tenn. Code Ann. § 36-5-104. The latter statute, however, is not a contempt statute; rather, it defines a criminal offense and permits a trial court to imprison an obligor spouse for a period not to exceed six (6) months for failure to provide support and maintenance for a minor child. Because Husband's punishment permitted him to purge himself of the contempt and avoid imprisonment by paying the arrearage on his support obligations, he was in fact held in civil contempt.

Husband relies on the evidence and argument relative to the court's determination of his monthly income, which we have previously discussed in this opinion, in support of his contention that he did not have the ability to pay his support obligations. We have affirmed the trial court's finding that his monthly income was $8,000, the court's use of that amount in setting child and spousal support obligations, and the finding that Husband has the ability to pay alimony. For the same reasons, Husband's contention that his failure to pay support was not willful because he did not have the ability to pay is not supported by the record.

As to his claim that he did not know the proper amount of support, the record shows that in the April 8, 2008 order, Husband was ordered to pay $225 per week in *pendente lite* support; the order did not designate this amount as either child support or spousal support.

-11-

The order was modified in a July 7, 2008 order to require Husband to pay $450 every two weeks. In the final decree Husband was ordered to pay $225 per week in child support and $225 per week in spousal support. The amount of Husband's obligations are clearly shown in the orders of the court and Husband has not cited to any evidence or testimony to demonstrate that he did not know of his obligation or that there was any confusion in that regard.

We affirm the court's holding that Husband was in contempt, however, we vacate the sentence of 180 day's imprisonment, since Husband was held in civil, not criminal contempt, and purged his contempt prior to December 3, 2010, by paying his support obligations.

*V. Husband's Tax Records*

Husband contends that the trial court erred in "denying the admissibility" of copies of his 2008 and 2009 tax returns.[11] Husband argues that, since a final judgment had not been entered at the time of the December 2, 2010 post-trial hearing, the court had the power to modify its November 2009 finding that Husband had the ability to pay and that the court erred in excluding the tax returns. In his brief, he cites to two pages of the transcript of the December 2, 2010 and states that they show the court's holding that "there could be no new evidence brought in that preceded the date of trial in October, 2009."

The record shows that on January 8, 2010, Husband filed a document styled "Brief In Support Of Motion To Direct Entry Of A Final Judgment As To Petitioner's Alimony In Futuro and Alimony In Solido Obligations, Or In The Alternative, To Reopen Proof" in which he requested the court to reopen the proof to allow him "to submit evidence of his current income and revise the court's order accordingly." An order was entered on March 4, 2010 in which the court held, in pertinent part:

> The Husband has then requested, in the alternative to entry of a partial judgment pursuant to Tenn. R. Civ. P. 54.02, that the Court reopen proof to consider a supplemental filing of exhibits of Husband's purported income, which were filed with the Court, to revise its decision. He submits this supplemental filing also in support of his Motion to Stay the payment of alimony pending appeal. The Court heard proof at trial and argument on the issue of Mr. Mays ability to pay. The Court has made findings regarding the

---

[11] The statement of the issue in Husband's brief states that the trial court erred in denying the admissibility of his 2009 and 2010 tax returns, but the argument portion of his brief exclusively discusses the court's alleged denial of his 2008 and 2009 returns. In our analysis, we focus on the substance of Husband's argument and consider this issue only with respect to the 2008 and 2009 tax returns.

same. The Court has additionally made findings related to Mr. Mays' lack of credibility and truthfulness, particularly concerning his income, based upon the documents entered at trial. The Court denies the Motion to stay alimony payments pending any appeal. The Court further finds it is in need proof [sic] of the status and resolution of Mr. Mays' bankruptcy to have further hearing in this cause.

* * *

The Motion to Direct Partial Final Judgment pursuant to Rule 54.02 as to the award of alimony and/or in the Alternative to reopen proof and revise the award is DENIED.

At the December 10 hearing, the court considered matters reserved from trial, including division of marital property and the contempt and punishment issues arising from Mother's second and third petitions for contempt. On the pages cited by Husband, the following discussion between Husband's counsel and the trial court took place:

MR. BLOOM: . . . The only thing I would ask, depending on what the Court rules as far as sanctions are concerned, I might want to make an offer of proof, and, you know, obviously, you don't have to be here for what a few things like 2008 tax return and 2009 tax return. I mean, just an offer of proof, and you don't have to be here just in case we need to go to the Court of Appeals for something.
THE COURT: All right.
* * *
THE COURT: Because I think I have already heard all the proof about that.
* * *
MR. BLOOM: You heard all the available proof --
THE COURT: I saw more than the bankruptcy court did.
MR. BLOOM: Yeah. No, I understand.
THE COURT: Because I may find that the bankruptcy court didn't know basically what was going on in this case.
MR. BLOOM: Well, I think that's -- I think that's true. And, really, you did hear -- I mean, you did hear all the proof that was available at the time, and that was all that was available to you, for sure. Some of the things that I would bring up, like 2008, 2009 tax returns, for example, and that's about it.
THE COURT: Well, had '08 not been filed then?
MR. BLOOM: No, you -- it had not been filed. You had 2007.
MS. BEAN [Counsel for Wife]: Judge, you heard the testimony of [Husband's accountant] at the trial. He called his CPA at trial to present all of that

-13-

evidence.  So I think the Court has heard all that proof.  But if he wants to submit additional tax returns now about -- I mean, you heard from his CPA.
MR. BLOOM: I agree with the Court about how you're going to proceed.  I'm just saying I might want -- depending on what happens and how you decide sanction wise, I just might want to do an offer of proof --
THE COURT: Okay.
MR. BLOOM: -- without taking anybody's --
THE COURT: Okay.
MR. BLOOM:  -- time.
THE COURT: All right.
MR. BLOOM: No big deal.
* * *
THE COURT: If he wants to make an offer of proof, he can always make an offer of proof.
MR. BLOOM: Thank you.

The cited portion of the transcript demonstrates that the court was willing to allow Husband to make an offer of proof; it does not show that the returns were offered into evidence and denied admissibility or that Husband made an offer of proof.  Husband does not cite to any other part of the record to his support his contention that the trial court denied the admissibility of his tax returns.

In any event, it is within the trial judge's discretion whether to reopen the proof for further evidence and that decision will not be disturbed absent a showing of injustice or an abuse of discretion.  *McGeehee v. Davis*, M2002-03062-COA-R3CV, 2004 WL 66686, at *2 (Tenn. Ct. App. Jan. 15, 2004).  The court's determination of Husband's income was based upon competent evidence, which has not been challenged by Husband.  Although the record does not show that the court denied Husband the opportunity to introduce the 2008 and 2009 tax returns, the court was not obligated to reopen the proof to allow their introduction and we find no abuse of discretion arising from the dialogue between counsel and the court quoted above.  This contention that the court erred in excluding Husband's 2008 and 2009 tax returns is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court for Wilson County is affirmed in part and vacated in part; the case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE