# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
JUNE 29, 2012 Session

## BRIDGET MICHELLE AGEE v. JASON FOREST AGEE

**Appeal from the Circuit Court for Sumner County**
**No. 2008CV31470C      C. L. Rogers, Judge**

**No. M2011-02103-COA-R3-CV - Filed November 19, 2012**

In this post-divorce dispute, Father challenges the trial court's modification of the parenting plan to designate Mother as primary residential parent and the trial court's calculation of his income and monthly child support obligation. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J. and BEN H. CANTRELL, SP. J., joined.

David R. Howard, Gallatin, Tennessee, for the appellant, Jason Forest Agee.

William L. Moore, Jr., Gallatin, Tennessee, for the appellee, Bridget Michelle Agee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Bridget Gentry ("Mother") and the appellant, Jason Agee ("Father"), divorced on May 4, 2009. They have one eight-year-old son. The final decree of divorce incorporated an agreed parenting plan that named both Mother and Father jointly as primary residential parents and gave them residential time on alternating weeks and alternating Wednesdays, for a total of 182.5 days each. Under this original parenting plan, Father paid Mother $38 per month as child support, based on reported gross monthly incomes of $1,808.03 for Father and $1,230.21 for Mother.

The dispute that underlies this appeal began on February 18, 2010 when Father filed a pro se petition for reduction of child support, citing "respondent's job change and income"

as the change in circumstances warranting the reduction. In her answer and counter-petition, Mother stated that her income had increased to $2,521 per month, requested that Father's income be imputed to $3,300 per month, and alleged that Father "has paid zero child support to [her] since May 4, 2009," and "is underreporting his alleged income of $1,808.03 per month, as he has been paying a mortgage note of approximately $1,300, plus utility bills of approximately $230-$280, plus a truck note of about $220, plus truck insurance, plus meals and entertainment." Mother requested to increase Father's child support obligation, to become the sole primary residential parent, and to designate Father as the alternate residential parent. Father's answer to the counter-petition denied most allegations and requested dismissal.

The parties then filed dueling petitions to modify the permanent parenting plan. Mother's alleged that "[s]ince the filing of the counter-petition there has been a material change in circumstances . . . [in that the child] is not functioning well in his school environment due to instability and confusion caused by the equal time provision of the permanent parenting plan" and that it was in the child's best interest for Mother to be designated primary residential parent and for Father to receive "standard parenting time." Father's petition cited "Mother's actions to undermine and discourage his relationship with the minor child, as well as create an instability relating to the continuity of the child's life" as the material change in circumstances, and submitted that the child's best interest would be served by his designation as primary residential parent with Mother receiving "a liberal shared parenting arrangement to include alternate weekends, overnights on Wednesdays, alternate major holidays, [and] expanded parenting time during the child's Spring, Fall, and Summer breaks."

During the June 2, 2011 final hearing, Mother and Father stipulated that a material change in circumstances had occurred, so the trial court was left to determine custody based on the child's best interest pursuant to Tenn. Code Ann. § 36-6-106. Mother, Father, Mother's husband, Father's live-in girlfriend, and the child's elementary school teacher testified[1] at the hearing. Father entered into evidence his 2009 income tax return and Mother entered Father's bank statements.[2] After all evidence was submitted, the trial court took under advisement modification of the parenting plan and ordered Mother and Father to draft proposed parenting plans as if each were to be named primary residential parent so that it

---

[1] The record does not contain any transcripts of the hearings in this case, but does include a Tenn. R. App. P. 24(c) statement of the evidence presented at the June 2, 2011 hearing. The evidence and findings of fact will be presented in greater detail below as relevant to the issues on appeal.

[2] Father is self-employed. The "Agee Construction" bank statements entered as Exhibit 5 detail deposits and purchases made from April 2010 through December 2010.

could decide the need for modification of the original parenting plan. The court further ordered that "Mother is to prepare a proposed determination of Father's income for the calculation of child support" and that Father would be afforded "an opportunity to prepare and submit a response to this proposed income determination."

Father submitted his proposed permanent parenting plan on June 10, 2011; Mother submitted hers on June 14, 2011, and the trial court signed and entered Mother's parenting plan that same day.[3] Pursuant to this parenting plan, Mother was designated primary residential parent; she would have 265 days with the child and Father would have 100 days with the child. Additionally, Father's child support obligation–based upon Mother's gross monthly income of $2,859 and an imputed income of $5,660 for Father–increased from $38 per month to $1,130 per month.

On June 17, 2011, Father, pursuant to Tenn. R. Civ. P. 52, requested findings of fact and conclusions of law, stating that it was unclear why the parenting plan had been modified. Pursuant to Tenn. R. Civ. P. 59 and by motion filed July 7, 2011, he also requested that the court alter or amend its judgment. The trial court heard Father's Rule 52 motion on June 29, 2011, and, by order entered July 14, 2011, directed Mother "to prepare specific proposed findings of fact as to why primary residential care of the parties' minor child should be modified to name her the primary residential parent, as well as the determination of Father's gross monthly income for the purposes of calculating child support" and directed Father "to prepare specific proposed findings of fact as to why primary residential care of the parties' minor child should not have been modified . . . as well as objection to the determination of [his] gross monthly income for the purposes of calculating child support."

In his proposed findings of fact, filed July 11, 2011, Father summarized the testimony from the June 2, 2011 hearing, submitting that, "while the parties may have effectively stipulated to the notion that there had been a material change of circumstances," "radical modification" of the parenting plan and the court's adoption of Mother's proposed parenting plan was against the child's best interest. Father's proposed findings of fact also presented his objections to the determination of his gross monthly income. The trial court considered Mother's and Father's proposed findings of fact and, by order entered July 29, 2011, found Mother's residence to be "significantly more stable" than Father's, expressed concern over "Father's intentional and significant understating of his income," and found Father's income to be $5,660 per month. Finally, the trial court found that the child's best interest was served by Mother's designation as primary residential parent, and found that Mother's submitted

_____

[3] Unlike Mother's plan, Father's proposed parenting plan did not address child support and did not include a child support worksheet. Father's notice of filing states that he "has purposefully reserved the issue of child support pending the final ruling in this matter."

child support worksheet was "correct and approved for calculation of the child support as per the child support guidelines."

After a hearing and by order entered September 1, 2011, the trial court denied Father's motion to alter or amend. Father appeals and raises two issues for review: (1) Whether the trial court erred in modifying the permanent parenting plan, and (2) Whether the trial court erred in calculating his income and monthly child support obligation.

STANDARD OF REVIEW

In cases involving custody and visitation, we review the trial court's findings of fact de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). Determinations regarding custody and visitation "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). "Although we accord trial courts broad discretion in these decisions, they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *5 (Tenn. Ct. App. Oct. 24, 2012).

ANALYSIS

I. Modification of the Permanent Parenting Plan

It is well-established that to modify a parenting plan to change the primary residential parent, the trial court must apply a two-part analysis: the court must find that "both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick*, 90 S.W.3d at 575; Tenn. Code Ann. § 36-6-101(a)(2)(B). Mother and Father conceded through their dueling petitions and through an oral motion during the final hearing that a material change in circumstances[4] had occurred, so the trial court was left to

_____

[4] Even so, the trial court found a material change in circumstances:

Both parties have alleged under oath in these respective pleadings that indeed a material change in circumstances has occurred. Since the child has started attending elementary

(continued...)

-4-

determine whether modification of the parenting plan served the child's best interest.

The best interest determination is based on the non-exhaustive factors set forth in Tenn. Code Ann. § 36-6-106(a)[5] and turns on the particular facts of each case. *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). Though the trial court has to *consider* all relevant factors, including those set out in Tenn. Code Ann. § 36-6-106(a), it is not required to list and discuss each of those factors in its order.[6] *See In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011); *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). The trial court analyzed the statutory factors as follows:

> The Court finds that the residence of the Mother is significantly more stable than the Father's residence. This is based primarily on the on again off again live-in arrangement between Father and his girlfriend, Ms. Gallant. Ms. Gallant admitted to the Court that on at least one occasion she ended her live-in arrangements with the Father to commence a live-in romantic relationship with one of the Father's best friends. Mother's husband, Mr. Gentry on the other hand has a stable relationship with his wife. Given the comparative

---

[4](...continued)
school, he has exhibited significant levels of confusion and frustration, particularly with the transportation issues due to the week to week alternati[ng] parenting schedule.

We note that "[e]vidence that an existing custody and visitation arrangement is not working is sufficient to support a finding of material change of circumstances." *Turner v. Purvis*, M2002-00023-COA-R3-CV, 2003 WL 1826223, at *4 (Tenn. Ct. App. Apr. 9, 2003) (citing *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 315-16 (Tenn. Ct. App. 2001)).

[5] The statutory factors are: (1) the love, affection, and emotional ties between the parents and the child; (2) the parents' disposition to provide the child with food, clothing, medical care, education, and other necessary care, as well as the degree to which a parent has been the primary caregiver; (3) the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; (4) the stability of the family unit of the parents; (5) the parents' mental and physical health; (6) the child's home, school, and community record; (7) the reasonable preference of the child, if twelve years of age or older; (8) evidence of physical or emotional abuse to the child, to the other parent, or to any other person; (9) the character and behavior of any other person who resides in or frequents the parent's home and the person's interactions with the child; and (10) each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and both parents, consistent with the child's best interest. Tenn. Code Ann. § 36-6-106(a).

[6] We do, however, encourage trial judges to make findings as precisely as possible, especially in matters involving child custody.

character of these third persons who will reside with the child, the Court finds that Mother's circumstances provide the environment providing for the child's best interest.

The Court is concerned with Father's intentional and significant understating of his income, while at the same time petitioning the Court for a reduction in child support currently set at only thirty-eight ($38.00) a month. This demonstrated an unwillingness to properly provide for his child. Father was content to have Mother wrongfully carry the financial burden.
. . .

It is in the best interest of the child to have the Mother designated as the Primary Residential Parent.

Father contends that "the evidence presented at trial, as well as the statutory factors found at Tenn. Code Ann. § 36-6-106, weigh as much in his favor as they do [in Mother's] and that, under the best interest analysis, they preponderate against the conclusions of law that were reached and, therefore, against modification." Respectfully, we disagree. While some of the statutory factors do not weigh in either Mother's or Father's favor, the trial court properly reviewed them and found that those at Tenn. Code Ann. § 36-6-106(a)(2), (4), and (9) favor Mother. The evidence shows that Mother is more disposed to provide for her child and financially more stable than Father, and that Mother's and her husband's home offers the child greater stability. After examining the entire record and giving appropriate weight to the trial court's findings, we conclude that the trial court did not err in modifying the parenting plan to designate Mother as primary residential parent, and that doing so served the child's best interest.

## II. Calculation of Income and Child Support

Broad discretion is afforded the trial court in its child support determinations, and "that discretion is bounded on all sides by the child support guidelines."[7] *Smith v. Darmohray*, No. M2003-00236-COA-R3-JV, 2004 WL 904095, at *4 (Tenn. Ct. App. Apr. 27, 2004) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)). We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). Where the trial court's determinations are based on its assessment of witness credibility, we "will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary." *Owens v.*

---

[7] Tenn. Comp. R. & Regs. 1240-02-04-.04.

*Tenn. Rural Health Improvement Ass'n*, 213 S.W.3d 283, 285 (Tenn. Ct. App. 2006).

The trial court made these findings:

The Court is concerned with Father's intentional and significant understating of his income, while at the same time petitioning the Court for a reduction in child support currently set at only thirty-eight ($38.00) a month. This demonstrated an unwillingness to properly provide for his child. Father was content to have Mother wrongfully carry the financial burden.

Father is self-employed and admits he only reports his income if he receives a 1099 form and all other income is not reported. Exhibit 5 from the June 2, 2011 hearing, Father's bank account records, shows average income of $5,660.00 each month. The Father claimed monthly income of only $1,808.03 for his child support calculation. The Court finds Father's income to be $5,660.00 per month.

. . .

The Court also adopts the child support worksheet submitted by the Mother and finds that the worksheet is correct and approved for calculation of the child support as per the child support guidelines.

Father argues that he was not afforded a chance to refute calculations of his monthly income and child support obligation. However, in his proposed findings of fact submitted July 11, 2011, Father did, with specificity, challenge and attempt to refute these calculations, and the trial court considered this before entering the July 29, 2011 findings detailed above. Furthermore, he asserts that he did not receive credit for child support payments that he submits for another child, and that he was not given allowable income credits for self-employment taxes and reasonable business expenses. There is no evidence in the record before us to contradict the court's findings: it contains no evidence of additional child support Father allegedly pays and no evidence of business expenses; and the only proof of Father's payment of self-employment taxes is his 2009 federal income tax return. What we have before us is Exhibit 5, details of Father's bank account, which in turn show deposits that amount to significantly more than Father's reported gross monthly income of $1,808.03, and Father's concession in oral argument that Exhibit 5 shows an average monthly income of $5,660. We are bound to consider only the facts established by the evidence in the trial court and set forth in the record. Tenn. R. App. P. 13(c).

After studying the record, and considering the deference we give to the trial court's determination of Father's credibility, we conclude that the evidence does not preponderate against the trial court's finding that Father's monthly income is $5,660 per month, and the

court properly used that amount in setting Father's child support obligation.

CONCLUSION

For the foregoing reasons, we affirm the trial court's decision. Costs of appeal are assessed against the appellant, Jason Agee, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE