IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2016 Session

**KOBIE TURNER v. CITY OF MEMPHIS**

**Appeal from the Circuit Court for Shelby County**
**No. CT-004957-13  James F. Russell, Judge**

_____

**No. W2015-02510-COA-R3-CV**

_____

Appellee sued the City of Memphis, alleging that he was injured in a car accident caused by a police officer employed by the City. After a bench trial, the trial court ruled in Appellee's favor, awarding him $90,000.00 in damages.  Appellant appeals.  On appeal, Appellant argues that the trial court erred when it found that Appellee had proven that Appellant was the proximate cause of Appellee's injuries and when it awarded Appellee what Appellant deemed to be an excessive amount of damages.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

André C. Wharton, Memphis, Tennessee, for the appellant, City of Memphis.

Mark N. Geller, Memphis, Tennessee, for the appellee, Kobie Turner.

OPINION

BACKGROUND

This action arose from a motor vehicle accident ("the accident") that occurred on December 30, 2012, at approximately 12:07 a.m.  The collision occurred on Third Street near the intersection of Crump Boulevard in Memphis, Tennessee, between Plaintiff/Appellee Kobie Turner ("Appellee") and Officer Tony Brown ("Officer Brown"), an employee of Defendant/Appellant City of Memphis ("Appellant"). Third Street consists of five full lanes: two lanes for traffic heading northbound, a middle turn

lane, and two lanes for traffic heading southbound.[1]  Appellee was visiting Memphis, Tennessee, from Charlotte, North Carolina, to attend his aunt's funeral that was to be held later in the day on December 30, 2012. It is undisputed that Appellee, while driving his cousin and the cousin's friend home, was in the lane closest to the middle turn lane heading south on Third Street and approaching Crump Boulevard. The remaining facts leading up to the collision, however, are sharply in dispute, as discussed in detail below.

On November 18, 2013, Appellee filed a complaint against Officer Brown and the Appellant[2] in the Shelby County Circuit Court under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated sections 29-20-101 *et seq.*, for the personal injuries sustained from the accident.  Therein, Appellee alleged that he was traveling southbound on Third Street, while Officer Brown was driving northbound on Third Street in a vehicle owned by the City of Memphis.  Appellee further alleged that Officer Brown "negligently and without warning, crossed traffic and struck the vehicle driven by [Appellee] head on" and that Officer Brown violated various provisions of Tennessee Code Annotated and various traffic ordinances. Appellee sought $300,000.00 for the injuries and damages incurred, which included: (1) injuries aggravated by the accident, such as back pain, chest pain, and neck pain; (2) fright and shock; (3) past and future physical pain; (4) past and future mental and emotional anguish; (5) medical expenses itemized pursuant to Tennessee Code Annotated section 24-5-113 totaling $28,421.18;[3] and (6) loss of property and loss of use of the vehicle requiring him to find alternative transportation to return to his home in North Carolina.

On March 5, 2014, Appellant filed an answer, generally denying the material allegations raised in the complaint and asserting several affirmative defenses. Specifically, Appellant contended: (1) that Appellee failed to state a claim upon which relief could be granted, (2) that governmental immunity barred the action; (3) comparative fault by non-parties; (4) that a sudden emergency and superseding cause existed; (5) that Appellee's bills were not reasonable or necessary; and (6) that Appellee failed to mitigate his damages.  Prior to trial, Appellee filed several motions in limine.[4]

---

[1] Although the parties refer to the turning lane as the "median," the record reflects, and the trial court found, that there is no median at all; rather, a full turn lane exists in the middle of Third Street.

[2] The City of Memphis, through counsel, made an oral motion to dismiss Officer Brown as a named defendant at trial on November 5, 2015. The trial court entered an order of voluntary dismissal with prejudice as to Officer Brown on November 19, 2015.

[3] Initially, Appellee also sought reimbursement for the chiropractic fees in the amount of $3,995.00.  However, prior to trial, Appellee withdrew this claim and only sought $24,426.18 in medical bills at trial.

[4] The trial court did not receive Appellant's response until the day before trial.  At trial, the trial judge, after commenting on the fact that he had never seen motions in limine filed in non-jury trials before, determined that several of the issues raised in the motions in limine had been addressed by: (1) the

On November 2, 2015, an agreed stipulation was entered by the parties stating that "the medical records [by the ambulance and the hospital] were reasonable and necessary and incurred as a result of the . . . accident." The case proceeded to trial without a jury on November 5, 2015.

At trial, Appellee testified that he was a stay-at-home father to one child. According to Appellee, he had previously been hit by a drunk driver in 2000 ("2000 accident") and had sustained a mild concussion and a broken femur bone in his right leg. Appellee testified that he was denied disability benefits related to the 2000 accident. However, Appellee denied seeking damages in this case for his previous injuries. Appellee recalled that on the night of the accident, he went to an establishment in downtown Memphis to see his brother perform with the house band. Although he stayed for an hour, Appellee testified that he did not eat nor drink anything. Appellee testified that he was driving the speed limit, at thirty-five miles per hour, on Third Street in the lane closest to the turn lane heading southbound and approaching the intersection at Crump Boulevard. According to Appellee, when he was a few feet from the intersection of Crump Boulevard, he "saw a police car coming from Crump [Boulevard] onto Third Street traveling northbound going around another vehicle, swerving out of control at a fast rate of speed." Appellee testified that the police car crossed over the middle turning lane into his lane of traffic, lost control of the car, and hit him head-on in the front end driver's side. Appellee introduced several exhibits depicting the aftermath of the accident and described that the impact was "hard" enough to deploy his air bag. Appellee denied seeing any dog on the road. After the impact, Appellee testified that he lost consciousness. Upon regaining consciousness, Appellee testified that he sustained loss of feeling and was in considerable pain in his head and throughout his body. Specifically, Appellee testified that his neck, head, shoulders, upper body, and lower body were in pain after the accident. Appellee testified that, because he was in pain and was unable to walk, two officers helped him out of his vehicle.

Thereafter, Appellee testified that the paramedics arrived, helped him onto a stretcher, and took him to the Regional One Health Medical Center ("hospital"). At the hospital, Appellee was subjected to a full trauma work-up, was given a neck brace because of whiplash, was given an I.V. for dehydration, and was administered considerable pain medication. According to Appellee, he was discharged a few hours before his aunt's funeral on the same day.

Appellee testified that the pain he felt was intensified during his stay at the hospital and the pain persisted while he was at the funeral. Further, Appellee testified that due to the damage to his vehicle, he was required to obtain a rental car through his

April 16, 2014 order striking Appellant's defense of comparative fault against an unknown third party and (2) the November 2, 2015 agreed stipulation by the parties. As to all other issues raised prior to trial, the trial court determined that it would "take those up as they come" during trial.

- 3 -

insurance company for the drive back to North Carolina. Once he was back in North Carolina, Appellee testified that he sought treatment with a chiropractor for a couple of months. While he was receiving treatments, Appellee described that he was in "[a] lot of pain [that he's] never experienced before on that scale, and it was very uncomfortable." By April 2013, Appellee testified that he felt better, and he could move around. According to Appellee, his injuries decreased his ability to engage in physical activities, including cooking, cleaning, and getting his son to and from school, and he still suffered from frequent headaches, anxiety attacks, and unease of rest.

Sergeant Kenneth E. Calhoun ("Sergeant Calhoun") testified that he had served as a sergeant for the Appellant for five years and is part of the Special Traffic Investigation Squad ("STIS"), a bureau within the Memphis Police Department; he had been an employee for twenty-two years. Sergeant Calhoun explained that the STIS is assigned to investigate critical accidents, fatalities, and when City equipment is involved in an accident. Such an investigation can include taking photographs of the scene, talking to the officer and others involved, recording his findings in a report, and deciding whether to issue a citation. On the night of the accident, Sergeant Calhoun testified that he arrived about fifteen to twenty minutes after he was called to the scene but that he did not see a dog. According to Sergeant Calhoun, when he interviewed Appellee, Appellee did not allege that Officer Brown turned his car at a high rate of speed, as Appellee had alleged at trial.

Carla Turner, Appellee's wife, testified that the first time that she saw Appellee following the accident was on the night of January 1, 2013, one day after the accident. Ms. Turner stated that Appellee appeared to be in pain. According to Ms. Turner, Appellee was under the care of a chiropractor since January 2, 2013, three times a week for four months. During those four months, Ms. Turner described Appellee as depressed and unable to play his music at church. Ms. Turner also testified that Appellee often complained that his heart and feet felt like pins and needles. Ms. Turner conceded on cross-examination that Appellee's right leg injury from the 2000 accident prevented him from performing certain household tasks. According to Ms. Turner, Appellee developed anxiety and/or panic attacks that have made it difficult for him to sleep. Ms. Turner further testified that Appellee, as the primary caretaker for their "disabled" son, and due to his injuries, could no longer "participate" with the son in various activities.

Officer Brown testified that he worked for the Memphis Police Department for four years and that he had received training in driving and operating his police car. Officer Brown testified that, on the night of the accident, he was driving to the office of the judicial commissioner in his police cruiser to perform official duties. Officer Brown further testified that he was driving thirty-five to forty miles per hour and denied that he was in a rush while on this errand. Given that no emergency response was necessary, Officer Brown had not activated any emergency lights or sirens. Officer Brown explained that he was driving in the lane nearest the curb going northbound on Third Street

approaching the intersection of Crump Boulevard. According to Officer Brown, he saw an object approach on his right side in his peripheral vision, which he thought at the time to be a person because he knew that intoxicated people frequent the area. As a result, Officer Brown testified that he automatically "shuffle steered"[5] toward the middle turn lane in order to avoid hitting the person, as he did not believe that merely braking would have prevented a collision with the purported pedestrian. Officer Brown denied seeing any oncoming traffic when he swerved. Additionally, Officer Brown denied that the accident occurred because of his attempt to pass another car, as Officer Brown contended that no other car was going northbound on Third Street for him to pass. After he swerved, he testified that he looked back and saw a light-brown dog. Officer Brown testified that he was unable to remember anything after that because he lost consciousness. When he regained consciousness, he testified that both cars were on the sidewalk next to a gas station. Officer Brown testified that he stumbled out of the police car and advised on the radio that he was in an accident. Officer Brown further testified that he saw two black males standing near Appellee's vehicle. According to Officer Brown, he explained his version of events exactly as testified to the investigating officers.

After closing arguments, the trial court issued an oral ruling, which was transcribed and later incorporated by reference in its November 19, 2015 order. The trial court considered the proof presented at trial and the deposition of Dr. William Smith received on October 2, 2015, who was the expert witness for Appellee. With regard to liability, the trial court found that the existence of the person or dog "[wa]s not actually established by extrinsic proof." According to the trial court, even if the trial court accepted the existence of the person or dog, "all reasonable minds would conclude[] that the object could have been and should have been safely avoided without moving into the oncoming traffic" because Officer Brown, driving on the lane closest to the curb going northbound, had "two full traffic lanes open to his left . . . to safely avoid striking the object." The trial court further found that there was no proof that Appellee was negligent on the night of the accident. Thus, the trial court concluded that Appellant was solely negligent for the damages suffered by Appellee.

With regard to damages, the trial court found that the accident was a "very substantial impact" that is "not your . . . typical fender bender." Although Dr. Smith did not treat Appellee, but rather reviewed Appellee's medical records, the trial court relied on his deposition for the medical explanation of the trauma work-up at the hospital and Appellee's diagnoses.[6] The trial court, based on the testimony of Appellee, Ms. Turner,

---

[5] According to Officer Brown, this technique, which he learned at the police academy, allowed him to "move from one way to the other in a quick fashion[.]"

[6] Most of Dr. Smith's testimony revolved around whether the treatment rendered at the hospital was reasonable and necessary. Dr. Smith testified that the medical bills were reasonably incurred and that the amount charged was similar to the amounts charged by similar trauma units although the hospital is a level above most other local hospital emergency rooms. Dr. Smith further testified that Appellee's

- 5 -

and Dr. Smith, found that Appellee "suffered mightily from the injuries sustained in [the] . . . accident" and awarded Appellee actual and compensatory damages in the amount of $90,000.00 plus court costs. Appellant timely appeals.

## ISSUES

Appellant presents two issues for our review, which were taken from its brief and slightly restated:

1. Whether the trial court erred in finding that the [Appellee] had proven by preponderance of the evidence that [Officer Brown] was the legal cause of [Appellee's] injuries?

2. Whether the trial court's damages award was excessive in light of the evidence presented by the [Appellee]?

## STANDARD OF REVIEW

The trial court heard this case sitting without a jury. Accordingly, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). Additionally, the trial court's findings on credibility, whether express or implicit, are entitled to great deference on appeal. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008). Where the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

## DISCUSSION

Appellant first argues that the trial court erred in finding that Officer Brown was the legal cause of Appellee's injuries by failing to properly apply the sudden emergency doctrine. According to the Tennessee Supreme Court:

---

injuries were caused by the accident. According to Dr. Smith, after Appellee was discharged from the chiropractor, he was diagnosed with several post-traumatic ailments. On cross-examination, Dr. Smith conceded that Appellee would heal on his own and there was no evidence of bleeding caused by the accident.

The sudden emergency doctrine, which has now been subsumed into Tennessee's comparative fault scheme, *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn.1995), recognizes that a person confronted with a sudden or unexpected emergency which calls for immediate action is not expected to exercise the same accuracy of judgment as one acting under normal circumstances who has time for reflection and thought before acting. *See Young v. Clark*, 814 P.2d 364, 365 (Colo. 1991); *see also Prosser and Keeton on the Law of Torts*, § 196.

The doctrine no longer constitutes a defense as a matter of law but, if at issue, must be considered as a factor in the total comparative fault analysis.

*McCall v. Wilder*, 913 S.W.2d 150, 157 (Tenn. 1995). "While the sudden emergency doctrine is not treated as an affirmative defense, the burden of proving the occurrence of [an event that establishes the sudden emergency doctrine] is on the defendant." *Knoxville Optical Supply, Inc. v. Thomas*, No. 03A01-9207CV00267, 1993 WL 574, at *2 (Tenn. Ct. App. Jan. 4, 1993) (citing *Blumberg v. Hofstetter*, No. 89-133-II, 1989 WL 122974 (Tenn. Ct. App. Oct. 18, 1989)).

Here, the trial court was presented with conflicting testimony from Appellee and Officer Brown regarding the existence of a dog in the road that forced Officer Brown to veer into oncoming traffic. Faced with this conflicting proof, the trial court resolved the conflict in favor of Appellee and found that Officer Brown failed to establish that a dog or person was in the road on the night of the accident. Clearly, the trial court's resolution of this issue turns on its assessment of the credibility of the witnesses before it. "The trial court's findings with respect to credibility and weight of the evidence may generally be inferred from the manner in which the court resolves conflicts in the testimony and decides the case." *Walker v. G.UB.MK Constructors,* No. E2015-00346-SC-R3-WC, 2016 WL 2343177, at *4 (Tenn. May 2, 2016) (citing *Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn. 2004)). "[F]indings that are related to the issue of credibility will not be disturbed by this court, absent other concrete evidence to the contrary which shows that the trial judge erred in his judgment of the veracity of the witnesses." *Worth v. Cumberland Mountain Prop. Owners Ass'n, Inc.*, No. 03A01-9709-CV-00442, 1999 WL 61629, at *4 (Tenn. Ct. App. Feb. 10, 1999) (quoting *Farmers & Merchants Bank v. Dyersburg Prod. Credit Ass'n*, 728 S.W.2d 10, 18 (Tenn. Ct. App. 1986)). As previously discussed, where the trial court's factual determinations are based upon its assessment of witness credibility, we will only overturn the trial court's rulings if clear and convincing evidence to the contrary is shown. *See Crabtree*, 337 S.W.3d at 811. The Tennessee Supreme Court has described the "clear and convincing" burden as follows:

"Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn

from the evidence." ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" ***Goff v. Elmo Greer & Sons Constr. Co.***, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting ***Teter v. Republic Parking Sys., Inc.***, 181 S.W.3d 330, 341 (Tenn. 2005)). In general, "the bar for attaining relief is set very high and the burden borne by the [Appellant] is heavy." ***Johnson v. Johnson***, 37 S.W.3d 892, 895 n.2 (Tenn. 2001).

***Furlough v. Spherion Atl. Workforce, LLC***, 397 S.W.3d 114, 128 (Tenn. 2013).

Despite Appellant's argument to the contrary, we cannot conclude that Appellant has presented clear and convincing evidence that would allow this Court to overturn the trial court's implied credibility finding in favor of Appellee as to the existence of a dog or person. *See **Owens v. Tenn. Rural Health Improvement Ass'n***, 213 S.W.3d 283, 288 (Tenn. Ct. App. 2006) (refusing to overturn trial court's credibility determinations when Appellants "failed to point to clear and convincing evidence in the record . . . demonstrat[ing] that the trial court erred" on the issue of witness credibility). Whether the sudden emergency doctrine can apply depends on whether the facts establishing the emergency exist, and in this case, the trial court found that Appellant failed to meet its burden to establish the existence of a sudden emergency. *See **Thomas***, 1993 WL 574, at *2. Moreover, the trial court went further in its ruling to find that, even if a dog or person present were in the road, Officer Brown nevertheless committed negligence in crossing two full lanes of traffic to veer into oncoming traffic causing the accident. Having reviewed the evidence regarding the road where the accident took place as well as the other evidence in the record, we cannot conclude that the evidence preponderates against the trial court's finding that even where a dog or person was in the road, Officer Brown nevertheless committed negligence in crossing several lanes of traffic to hit Appellee traveling in the opposite direction.

Appellant next argues that the trial court "erred when it failed to consider the respective degree [of] negligence of the parties involved, including the dog . . . and the [Appellee] himself." Here, the trial court did consider Appellee's fault; however, it found that Appellee contributed no fault to the accident. Thus, the proper issue is whether the trial court should have considered and apportioned fault to a phantom non-party.[7] As

---

[7] We realize that Appellant's argument can also be interpreted as "the trial court erred in assigning no fault to the Appellee." "[T]he comparison and allocation of fault is a question of fact to be decided by the finder-of-fact, that is the jury or the trial court sitting without a jury." ***Henley v. Amacher***, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *6 (Tenn. Ct. App. Jan. 28, 2002) (citing ***Brown v. Wal-Mart Discount Cities***, 12 S.W.3d 785, 789 (Tenn. 2000); ***Turner v. Jordan***, 957 S.W.2d 815, 824 (Tenn. 1997); ***Prince v. St. Thomas Hosp.***, 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996)). As previously discussed, questions of fact are reviewed de novo with a presumption of correctness. Appellant points to no evidence in the record other than the fact that Appellee "waivered in terms of what he saw." As discussed, *supra,* we will not overturn a trial court's credibility determination absent clear and convincing

previously discussed, however, the trial court did not find credible the evidence regarding the dog, and we will not disturb this credibility finding. Therefore, the trial court was not required to assign fault to a defendant that it found to not have been established by the evidence. Even assuming arguendo that the trial court believed in the existence of the dog, it may not apportion any fault to a phantom non-party. *See* ***Brown v. Wal-Mart Disc. Cities***, 12 S.W.3d 785, 789 (Tenn. 2000) (holding that, because a defendant's fault may not be shared with an unknown tortfeasor who has not been sufficiently identified by the defendant, the trial court did not err assigning defendant 100% of the fault, despite the fact that the jury assigned some fault to an unknown tortfeasor).

Finally, Appellant argues that the damages award of $90,000.00 was excessive in light of the fact that: (1) Appellee offered no evidence concerning the property damage to his car; (2) Appellee's testimony regarding his pain was inconsistent and he was unconscious for a time immediately following the accident; (3) there was no testimony regarding the cost of Appellee's physical therapy, chiropractic care, or the necessity of either treatment; (4) Appellee's medical bills admitted into evidence totaled only $24,426.18.

At the outset, we note that because the parties entered into the November 2, 2015 agreed stipulation that the medical bills were reasonable and necessary, we need not discuss whether the actual damage award in the amount of $24,426.18 was excessive based on the evidence presented at trial. In addition, the trial court's order contains no indication that it considered property damage to Appellee's car as a part of its damages calculation nor did it consider the cost of his chiropractic care. Indeed, as the trial court reiterated in is order: "Again keeping in mind . . . [any claim for monetary damages or any follow-up treatment] by the chiropractic clinic has been withdrawn." The trial court appeared to grant the bulk of the damage award based on the seriousness of the impact on Appellee's life, noting that "this was a very substantial impact," that is "not your typical fender bender," and "[t]he fact that both drivers suffered a loss of consciousness speaks volumes . . . about the seriousness and gravity of injuries to [the drivers]." Further, the trial court found that Appellee "suffered mightily from the injuries sustained in [the accident]." Thus, the issue is whether the trial court's grant of $65,573.82 in compensatory non-economic damages was excessive.

As the Tennessee Supreme Court has observed:

---

proof. We further note that within the same argument, Appellant urges us that the trial court "should have attributed all fault to the dog" and the "sole proximate cause of this accident was the dog." Given Appellant's argument that fault should be attributed **only** to the dog and the complete lack of evidence concerning any negligence on the part of Appellee, we cannot conclude that the trial court erred in failing to assign any fault to Appellee.

An award of damages, which is intended to make a plaintiff whole, compensates the plaintiff for damage or injury caused by a defendant's wrongful conduct. *Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975). A plaintiff may be compensated for any economic or pecuniary losses that naturally result from the defendant's wrongful conduct. *Id.* Economic damages include out-of-pocket medical expenses, future medical expenses, lost wages, and lost earning potential. The plaintiff bears the burden of proving damages to such a degree that, while perhaps not mathematically precise, will allow the [trier of fact] to make a reasoned assessment of the plaintiff's injury and loss. *Provident Life & Accident Ins. Co. v. Globe Indem. Co.*, 156 Tenn. 571, 576–77, 3 S.W.2d 1057, 1058 (1928); *Overstreet [v. Shoney's Inc.]*, 4 S.W.3d [694,] at 703 [(Tenn. Ct. App. 1999)].

A plaintiff is also entitled to recover compensatory damages for non-economic loss or injury. *Elliott v. Cobb*, 320 S.W.3d 246, 247 (Tenn. 2010). "Non-economic damages include pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life." *Id.* at 248 n.1 (quoting *Overstreet*, 4 S.W.3d at 715). Damages for pain and suffering are awarded for the physical and mental suffering that accompany an injury. *Overstreet*, 4 S.W.3d at 715. Damages awarded for loss of enjoyment of life are intended to compensate a plaintiff for the impairment of the ability to enjoy the normal pleasures of living. *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 571–72 (Tenn. 2005). . . . The assessment of non-economic damages is not an exact science, nor is there a precise mathematical formula to apply in determining the amount of damages an injured party has incurred. *See McCullough v. Johnson Freight Lines, Inc.*, 202 Tenn. 596, 606, 308 S.W.2d 387, 392 (1957); *S. Ry. Co. v. Sloan*, 56 Tenn. App. 380, 392, 407 S.W.2d 205, 211 (1965). Thus, a plaintiff is generally not required to prove the monetary value of non-economic damages.

*Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419–20 (Tenn. 2013) (footnotes omitted). In addition, "[d]amages may never be based on mere conjecture or speculation." *Overstreet*, 4 S.W.3d at 703 (citing *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 335–36 (Tenn. Ct. App. 1987); *Nashland Assocs. v. Shumate*, 730 S.W.2d 332, 334 (Tenn. Ct. App. 1987)). "However, uncertain or speculative damages are prohibited only when the existence, not the amount, of damages is uncertain." *Id.* (citing *Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). "Evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty." *Id.* (citing *Airline Constr., Inc. v. Barr*, 807 S.W.2d at 274; *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985)). "Whether the trial court has used the proper

measure of damages is a question of law, which we review de novo, but the actual amount of damages awarded, provided within the limits ascribed by law, is a question of fact, which we review with a presumption of correctness." **Huskey v. Rhea Cnty.**, No. E2012-02411-COA-R3-CV, 2013 WL 4807038, at *12 (Tenn. Ct. App. Sept. 10, 2013) (citing **Beaty v. McGraw**, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998); Tenn. R. App. P. 13(d)). "In non-jury cases, 'we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded.'" **Id.** (quoting **Beaty**, 15 S.W.3d at 829).

Here, although Appellant contends that Appellee had a pre-existing injury to his right leg as a result of the 2000 accident, Appellee testified that he was seeking damages for his pain and ability to function stemming only from the instant case. According to Appellee, although the pain in his head and body decreased in intensity in April 2013, he testified that he still felt lingering pain, still had panic attacks, and is no longer able to enjoy activities that require any physical exertion as of the date of trial. Furthermore, because Appellee sustained loss of consciousness immediately after a "substantial" impact, he was required to be subjected to a full trauma work-up at the hospital. This work-up included several tests, including blood work, blood counts with differentials, chemistry profiles, bleeding studies, a lactate level to assess perfusion of the tissues, an electrocardiogram, and computerized tomography scans of the abdomen, chest, and pelvis. In addition, he was given intravenous fluids and was required to wear a neck brace.[8] Moreover, Dr. Smith testified in his deposition that Appellee's level of pain was "significant" following the accident. Ms. Turner, who was able to observe Appellant on a day-to-day basis, also testified as to Appellee's condition before and after the accident, such as his adjustment to pain, increased depression, unease of rest, and inability to engage in activities he had once enjoyed. None of this evidence was in anyway disputed or discredited by Appellant. Accordingly, the evidence clearly shows that Appellee sustained pain and suffering as a result of the accident and therefore was entitled to damages to compensate him for that injury.

Having determined that Appellee clearly established his entitlement to pain and suffering damages, we further conclude that the evidence does not preponderate against the trial court's total award of $90,000.00 in compensatory damages. The trial court specifically credited the testimony and opinions of Appellee, Ms. Turner, and Dr. Smith, and awarded Appellee $90,000.00, significantly less than the $300,000.00 that the Appellee initially sought in his complaint. Still, Appellant argues the only evidence regarding the extent of Appellee's injuries was that of Appellee's and Ms. Turner's testimony, which Appellant contends were "sometimes contradictory and incredulous." As previously discussed, however, we will not disturb the trial court's credibility findings unless clear and convincing evidence exists to the contrary, and none exists in this case.

---

[8] There was no testimony regarding low long Appellee was required to wear the neck brace.

Furthermore, we note that the $65,573.82 awarded for non-economic damages is not outside the realm of reasonableness based on previous Tennessee car accident cases. *See, e.g.*, **Johnson v. Nunis**, 383 S.W.3d 122, 128 (Tenn. Ct. App. 2012) (reinstating jury verdict of $116,843.90 which consisted of $45,000.00 in non-economic damages, $16,493.22 in medical bills, and $45,000.00 for loss of earning capacity); **Rippy v. Cintas Corp. Servs.**, No. M2010-00034-COA-R3-CV, 2010 WL 3633469, at *1 (Tenn. Ct. App. Sept. 17, 2010) (affirming jury verdict of $78,000.00 in non-economic damages and $16,137.29 in economic damages for a total of $94,637.29). Despite Appellee's contention otherwise, we find no basis to conclude that the damage award was excessive or that the trial court improperly considered the damage to Appellee's car or the chiropractor bills. Consequently, the evidence does not preponderate against the trial court's award of damages in this case.

## CONCLUSION

Based on the foregoing, the judgment of the Shelby County Circuit Court is affirmed and the case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant, the City of Memphis.

_____
J. STEVEN STAFFORD, JUDGE